UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

ELAINE MATTHEWS                                                                                      PLAINTIFF

v.                                                                          CIVIL ACTION NO. 3:12-CV-828-H

JESSICA BROWN ROBERTS                                                                           DEFENDANT

**MEMORANDUM OPINION**

This is a *pro se* civil rights action under 42 U.S.C. § 1983. Plaintiff, Elaine Matthews, who is proceeding *in forma pauperis*, seeks injunctive relief and damages against the sole defendant, Meade County Attorney, Jessica Brown Roberts, for an alleged unconstitutional abridgement of her right to protest. After thorough review of the pleadings, the Court concludes that Plaintiff has failed to allege any policy or custom as the moving force, or other causation, of the county attorney's claimed unconstitutional conduct under *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 690 (1978). Therefore, the Court must dismiss the complaint for failure to state a claim on which relief may be granted.

**I.**

For proceedings *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that the action ... (i) is frivolous ...; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). A complaint should be dismissed as frivolous if it contains factual allegations that are "fantastic or delusional" and lacks an arguable basis in law or fact.[1] *Neitzke*

---

[1] This complaint is unusual to say the least. Plaintiff's claimed personal bond with a deer is indeed unusual. However, her complaint also alleges that the deer is being treated inadequately at the wildlife sanctuary. The courts are replete with cases involving animal welfare protests. While the Court cannot tell if the mistreatment allegations are true, the Court will accept the allegations as valid and acknowledge that Plaintiff's concerns fall into the zone of potential constitutional protection.

*v. Williams*, 490 U.S. 319, 325 (1989). Even if the complaint contains an arguable basis, dismissal for failure to state a claim is warranted if it appears beyond a doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000).

In federal court, a *pro se* litigant is held to less stringent pleading standards than pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). In determining the sufficiency of the pleadings, the district court must view the complaint in a light most favorable to the plaintiff., *Prater v. City of Burnside*, 289 F.3d 417, 424 (6th Cir. 2002). The district court must accept all well-pleaded factual allegations as true. *Tackett v. M & G Polymers*, 561 F.3d 478, 488 (6th Cir. 2009). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Id.* Rather, the allegations must provide enough facts to state a right to relief above a speculative level – a level sufficient to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Id.,* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

## II.

Plaintiff has been protesting a private business's alleged mistreatment of a whitetail deer after its transfer from a nearby nature preserve, Bernheim Forest. The Broadbent Wildlife Sanctuary is located in Guston, Meade County, Kentucky, on U.S. Highway 60. Plaintiff states that the business owner "fraudulently and tortiously removed Briana which included – among all else – never finding out how to feed Briana [the deer] and how to transition Briana's commercial feed; so that [the business owner] with her resident vet incompetently, ignorantly ended up

permanently crippling Briana who, if still alive, may live in constant pain."[2]

In protest, since February 2012, Plaintiff has sat in a lawn chair and parked her vehicle along U.S. 60 at various times with signs of the animal's treatment. Plaintiff refers to this protest location, which apparently achieves the nearest position to the doe available to Plaintiff, simply as Guston (hereinafter the "business front"). Defendant describes U.S. 60 at this location as a major thoroughfare with a 55 mile-per-hour speed limit.

In late January 2013, two Meade County sheriff's deputies arrived at the scene and arguably threatened Plaintiff with arrest for criminal trespass unless she removed herself, her vehicle, and signs from the roadside – an episode which Plaintiff describes as distressing. According to Plaintiff, the sheriff's deputies stated that they were acting under the direction of the county attorney. Plaintiff further alleges the county attorney later advised her by telephone that she may not protest at the business front, because it is private property, nor in the state's right-of-way along U.S. 60. She may instead protest at the Meade County courthouse. Plaintiff complains the courthouse is located more than ten miles from the business front.[3] Plaintiff vehemently objects to this alleged restriction and has filed suit against the sheriff's department in state court and has filed three lawsuits in federal court against various defendants.

In this action, Plaintiff seeks an order enjoining the county attorney from "interfering" with her right to protest along U.S. 60 at the business front. The injunction sought includes an order restraining the assistant county attorney, Steven Crebessa, who defends the sheriff's department in the state action, and all others under the county attorney's authority, from any

---

[2] Plaintiff's Opposition at 12 (DN 32).

[3] Plaintiff's letter (DN 28).

-3-

conduct, including the positions taken in pending litigation, which infringes Plaintiff's ability to protest at the business front.[4]

Plaintiff describes the sheriff's actions as traumatic, emotionally distressing, and irreparably harmful. Plaintiff explains that she shares a deep bond with the deer, which she calls Briana, and that these traumatic events have triggered memories of childhood abuse and helplessness, emotions which, in short, coincide with her frustration and feelings of helplessness in having to resort to the judiciary to vindicate her freedom of speech.[5]

### III.

Congress enacted § 1983 to create a civil remedy for individuals who have injuries due to the deprivation of a federal right "caused" by a "person" acting under color of law. *West v. Atkins*, 487 U.S. 42, 48-49 (1988) ("a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law").

In the initial screening of the complaint, the Court construed the allegations, which did not specify capacity, as a claim against the county attorney in her official capacity.[6] Our courts consider such claims as a pleading suit against the entity of which the official is an agent, and the pleader may recover damages against the entity rather than the personal assets of the official. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Local governmental bodies and municipalities are considered to be "persons" within the meaning of

---

[4] Plaintiff's Response to Show Cause at 12 (DN 26).

[5] Plaintiff's Motion at 7 (DN 12); Plaintiff's Opposition at 8 (DN 32).

[6] Memorandum and Order at 6 (DN 16); *see also Meade v. Fackler*, 2011 WL 43225, *2 (W.D.Ky. Jan. 6, 2011) (J. Heyburn, construing allegations against a government official with unspecified capacity as claims against defendants in their official-capacity, under *Moore v. City of Harriman*, 272 F.3d 769, 772-73 (6th Cir. 2001)).

-4-

§ 1983. *Monell*, 436 U.S. at 690.

In these circumstances, a plaintiff must allege "the entity itself is a 'moving force' behind the deprivation [of a federal right] ...; thus, in an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." *Graham*, 473 U.S. 166; *Monell,* 436 U.S. at 690 (stating that the language of § 1983, "compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort"). Thus, a local government's liability may not arise solely because it employed a tortfeasor. *Id.,* at 695. Instead, "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.*[7]

Thus, a governmental entity is liable under § 1983 only when the entity itself is a "moving force" behind a constitutional violation. *Id.* In some cases, the conduct of a high-ranking government officer alone may constitute the policy of the government entity sufficient to incur *Monell* liability. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-82 (1986). The official must be responsible, however, for "establishing final government policy" respecting such activity, as determined under state law. *Id.* Otherwise, every decision by a government officer might automatically subject the local government to § 1983 liability – a proposition the Court rejected in both *Monell* and *Pembaur. Id.,* at 481.

After thorough review of all the pleadings, and despite considerable leniency afforded to *pro se* pleadings, the Court respectfully concludes the complaint and amended complaint do not

---

[7]The *Monell* "policy or custom" requirement applies to damages claims as well as prospective injunctive relief. *Los Angeles County v. Humphries*, 131 S.Ct. 447, 779 (2010).

contain sufficient allegations from which the Court may reasonably infer the county itself was the moving force behind the alleged constitutional tort. There are simply no allegations that the county attorney has acted pursuant to an official policy or custom in Plaintiff's pleadings, including her response to the show cause order giving notice of this potential deficiency.[8]

Moreover, the pleadings do not support a reasonable inference that the county attorney possesses final authority to establish county policy to regulate protest along a state highway. A county attorney's statutory duties include the duties to represent the county's interest in litigation and to give legal advice to county officers. KY. REV. STAT. ANN. § 69.210. The statute explicitly provides that "when so directed by the fiscal court" the county attorney shall, among other things, defend the county in all civil actions. § 69.210(1). Because these provisions either retain final authority within the fiscal court or are otherwise silent on the issue, there is no basis for concluding the county attorney possesses final policymaking authority – a point which reflects the tradition that an attorney acts not as a principal but as the agent of the principal.[9]

Because Plaintiff fails to sufficiently plead the essential elements of *Monell* liability, the Court will dismiss the official capacity claim for failure to state a claim upon which relief may be granted.

---

[8] Plaintiff states that the county attorney "is NOT representative of her county government, her county government is not involved in this, her illegal acts put her outside of her county government." Plaintiff's Resp. to Show Cause at 2 (DN 26). Plaintiff also states that the defendant is "a rogue county attorney" acting against her elected position and "sold herself" to the interests of the business owner. *Id.* at 3, 6-7. Plaintiff explains that the business owner is rich and un-American and that the county attorney is "her robot, pawn, girl toy ..." *Id.,* at 10.

[9] *See e.g.*, Restatement (Third) of Agency § 1.01, comment c (2006-2012).

-6-

**IV.**

In addition, Section 1983's causation requirement, discussed at length in *Monell*, poses a further obstacle to Plaintiff's claim and would make any amendment to the pleadings futile. Plaintiff's fall back position is that *Monell* should not apply and the county attorney should be liable in her individual capacity, although her original pleadings and service of process indicate official capacity.

Again, this course would be futile. A claim for damages or attorney's fees would fail under the absolute immunity afforded to county attorneys. *See Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). Moreover, the claim for injunctive relief, that is, an order restraining the county attorney from taking an adverse position in parallel state civil proceedings, lacks a direct causal link, both proximate and cause in fact, to the alleged deprivation. *See Monell*, 436 U.S. at 692, (addressing § 1983's textual basis for linking fault and causation); *Doe v. Sullivan County*, 956 F.2d 545, 549-50 (6th Cir. 1992) (stating that causation is not merely a pleading requirement but also a substantive element of § 1983 liability); *Dixon v. Burke County*, 303 F.3d 1271, 1275 (11th Cir. 2002); SHELDON H. NAHMOD, CIVIL RIGHTS AND CIVIL LIBERTIES LITIGATION § 3:109, 110 (4th ed. 2012).

First, the county sheriff is not a subordinate of the county attorney. KY. REV. STAT. ANN. §§ 69.210 - 70.010 *et seq.* The county attorney has no statutory authority to direct the sheriff to effect an arrest. Rather, the county attorney provides legal advice, and the sheriff's actions, either in furtherance or not of this advice, is a decision which breaks the chain of causation. Second, the county attorney's defense in the state civil suit is not directly linked nor sufficiently proximate to the alleged deprivation, that is, the denial of protest at the business front.

According to her pleadings, Plaintiff stopped protesting because the sheriff's deputies warned her that she would be arrested for criminal trespass. Plaintiff alleges a sheriff's deputy stated that the county attorney directed this action, but this allegation calls for a legal conclusion of the county attorney's authority that the Kentucky statutes contradict. Plaintiff alleges the county attorney repeated the sheriff's deputies' warning and directed her to protest at the courthouse. However, such conduct is too tenuous to support causation under § 1983.

In short, the gravamen of Plaintiff's complaint is a request for federal intervention in a pending state civil suit on the question whether the county may lawfully restrict Plaintiff's protest, along what is presumably private property and a state right-of-way on a state highway, as a reasonable time, place and manner restriction. These federal pleadings present numerous questions of fact on these issues.

**V.**

The Court respectfully observes that this memorandum does not reflect any view, favorable or unfavorable, toward the ultimate merit of Plaintiff's First Amendment claim. The claim is simply one that requires Plaintiff to refer in her pleadings to a plausible set of facts which support § 1983 liability against Defendant.

The pleading requirements aside, Plaintiff faces significant hurdles if the matter warranted review on the merits. For example, Plaintiff takes the view that a state right-of-way, assuming it exists and she was protesting within it, automatically gives her protected status to protest there and that the county attorney should explain what evidence she has that it is not safe to protest along U.S. 60. Plaintiff's claim, however, is not a foregone conclusion. Whether Plaintiff has suffered a deprivation of a First Amendment right entails numerous questions of

fact and law, which apparently remain at issue in parallel state proceedings in Plaintiff's civil claim against the sheriff's department.

The Court concludes the complaint fails to sufficiently plead that the county is the moving force behind the alleged deprivation of Plaintiff's First Amendment right to protest. The Court will therefore dismiss the complaint for failure to state a claim on which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2).

The Court will enter a separate order.

cc: Elaine Matthews, *Pro Se*
    Counsel of Record